194 So.2d 331 (1966)
Succession of Freddie Robertson KILLINGSWORTH.
Mrs. Rose Schlater Johnston TUTTLE
v.
Edward Hill SCHLATER et al.
No. 6783.
Court of Appeal of Louisiana, First Circuit.
November 21, 1966.
Writ Refused February 3, 1967.
Rehearing Denied December 28, 1966.
Byron R. Kantrow of Kantrow, Spaht, Weaver & Walter, Victor A. Sachse, of Breazeale, Sachse & Wilson, Charles H. Dameron, of Durrett, Hardin, Hunter, Dameron & Fritchie, Robert J. Vanderworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Kopfler & Causey, Hammond, Middleton & Templet, Plaquemine, for appellees.
Before LANDRY, BAILES, and ELLIS, JJ.
ELLIS, Judge.
Appellants in these cases seek to have reversed a judgment rendered pursuant to a motion for judgment on the pleadings which was filed herein by the plaintiffs. Under the terms of Article 965 of the Code of Civil Procedure, we are limited in this case to a perusal of the pleadings, and must assume as true all allegations of the petitions not denied by defendant, and all well pleaded allegations of the answer. The operative facts, as revealed by the pleadings, are essentially as follows:
Mrs. Freddie Robertson Killingsworth died in Iberville Parish on July 19, 1961, *332 leaving surviving her the following collateral heirs, each having the proportionate interest in the estate shown opposite his name:

Edward Hill Schlater 1/8
Sara Elizabeth Appleton 1/32
Mary Blouett Mitchell 1/32
Frances S. Melton 1/32
Mildred T. Sanders 1/32
Frederick M. Schlater 1/12
Thomas Weissinger Schlater 1/24
Mary Hughes Schlater Stumb 1/24
John Day 1/24
Mary Alice Day 1/24
Nona Mae Bronner Norton 1/16
Fred LeBlanc 1/8
Rome Schlater Johnston Tuttle 1/12
Winona Johnston Bell 1/12
Mary Lewis Johnston Rowe 1/12

She also left a will, in nuncupative form by public act, executed before W. P. Obier, an Iberville Parish Notary Public, on October 7, 1955.
It is to be noted that only five of the legal heirs, who would otherwise share three eighths of the estate, are included in the will, along with a number of special legatees who would otherwise be strangers to the succession. The latter include Mr. Obier, the Notary Public who received the will, who was bequeathed the sum of $2000.00. Mr. Obier predeceased the testator.
Various pleadings were filed in the succession proceeding which put at issue the validity of the will and the possible liability of the heirs of Mr. Obier, his law firm Obier and Middleton, his law partner, W. B. Middleton, Jr., and their professional liability insurer, St. Paul Fire and Marine Insurance Company, in the event the will should be declared invalid.
In addition to the pleadings in the succession proceeding, a suit for a declaratory judgment was filed by the proponents of the will, in which all of the same points are put at issue by pleadings similar to those in the succession proceeding.
The allegations of the answer which attack the validity of the will set forth two bases: first, that the bequest to the notary who received the will and who predeceased the testatrix strikes the entire will with nullity; and second, that the will was typewritten by one of the witnesses, one Lorraine Melancon, from the dictation of Mr. Obier, and not by the notary himself.
The matter came before the District Court for hearing on a number of exceptions which had been filed by the Obier heirs, St. Paul and Middleton. All of these exceptions were overruled, but in the course of his opinion, the trial Judge rendered an opinion that the will was valid and invited the filing of a motion for judgment on the pleadings. Such a motion was promptly filed by the proponents of the will, and maintained by the Court. The judgment declared the validity of the will and ordered the distribution of the estate in accordance with its terms. It also dismissed as of nonsuit the demands against the Obier heirs, William B. Middleton, and St. Paul, and also the original petition for declaratory judgment filed in the succession proceedings.
Devolutive appeals were taken by the opponents of the will, the testamentary executor under the will, and the Obier heirs, Middleton and St. Paul.
The major point in this case, which has been most ably briefed and argued before this court, deals with the validity of a nuncupative will by public act which is not actually recorded by the notary public's own hand, whether it be handwritten or typewritten.
The formalities surrounding the execution of such a will are set forth in Articles 1578, 1579, and 1580 of the Civil Code as follows:
Article 1578
"The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing *333 in the place where the will is executed, or of five witnesses not residing in the place.
"This testament must be dictated by the testator, and written by the notary as it is dictated.
"It must then be read to the testator in the presence of the witnesses.
"Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts."
Article 1579
"This testament must be signed by the testator; if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."
Article 1580
"This testament must be signed by the witnesses, or at least by one of them for all, if the others can not write."
Article 1595 provides as follows:
"The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
This point was considered by the Supreme Court of this state over 150 years ago in Knight v. Smith, 3 Mart. (O.S.) 156 (1813), in which case an attack was made on the validity of a nuncupative will by public act on the ground, among others, that it was written by the notary's clerk rather than the notary himself. In that case, the Court, in finding the will invalid, said:
"The law which makes it the duty of the notary to write the will is not only clear in its expressionsit is also clear in its object. The legislature has been unwilling to trust any body else but the notary with the sacred function of writing a willa function which, in unfaithful or negligent hands, may be liable to abuse of the most serious and most dangerous nature. But, be that as it may, the law is such and must be obeyed. Should this be attended to with inconveniences, the Court could not remedy it."
In the case of Prudhomme v. Savant, 150 La. 256, 90 So. 640 (1922), the Supreme Court considered for the first time the validity of a nuncupative will by public act which had been typewritten by the notary rather than handwritten. The validity of the will was upheld, but it was implicit throughout the opinion of the Court, both in the original opinion and on rehearing, that the hand which physically transcribed the will of the testator, by whatever means, had to be that of the notary.
Appellees argue that when the Code was adopted the typewriter had not been invented, and that the Supreme Court in the Prudhomme case had not found it necessary to have a statute to enable it to approve a will typewritten by a notary. They argue that a simple extension of this line of reasoning would enable the Court to find this will valid, because the notary was present throughout the dictation and transcription of the will, and guided the making of the will without turning aside to any other act. They argue that his striking the keys of the typewriter would add nothing toward accomplishing the true expression of Mrs. Killingsworth's actual wishes.
We cannot agree with this line of reasoning. No one would argue, in the light of Knight v. Smith, supra, that a will written in the hand of the notary's secretary would be valid. Certainly the means of transcription is no more significant for a stenographer or clerk than it is for a notary.
The law of this state provides a number of legal methods for making a will, and prescribes the formalities which accompany each. There is the olographic will, which must be written in the hand of the testator; the nuncupative will by private act, which may be written by the testator, or anyone else at his dictation; the statutory will, *334 which may be written or typewritten by anyone; and the nuncupative will by public act. Of all these, only the latter makes proof of itself and may be ordered executed without the necessity of further evidence.
Because of the special status which it enjoys, it is mandatory that the clear provisions of the law relative to its confection be carried out to the letter.
We hold that a nuncupative will by public act by whatever means transcribed must be written by the hand of the notary public who receives it, and by no other.
The other point presented to us for decision relates to the effect of the bequest to the notary on the validity of the will. The alleged basis for its invalidity is the Article 1592 of the Civil Code which provides as follows:
"Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be."
In Succession of Purkert, 184 La. 792, 167 So. 444 (1936), the Supreme Court discussed this Article as it relates to a Notary Public as follows:
"Article 1592 is in the section entitled `General Rules on the Form of Testaments.' Manifestly, the reason why article 1592, in that section of the Code, while declaring that one who is instituted as an heir or named as a legatee is thereby disqualified as a subscribing witness to the will, does not declare also that he is thereby disqualified to serve as notary public, is that a notary public cannot serve as such in any deed to which he is a party or which is made directly to him personally. The notary public acts in a quasi judicial capacity, not only in the making of nuncupative wills by public act, but in many proceedings which are had before notaries public."
However, in that case, they found only the clause in the will relating to the Notary to be null because of lack of the required form for a nuncupative will by public act.
In Succession of Feitel, 187 La. 596, 175 So. 72 (1937), the validity of a will was attacked on the ground that a clause therein appointing the notary as attorney for the succession constituted a testamentary disposition and that the entire will was nullified thereby. In discussing the point, the Court used the following language:
"In the succession of Purkert it was the residuary legacy that was contested by the heirs of the testator. The special legacies were not contested, and they remained valid. But the reference to Coin-Delisle, Donations and Testaments, art. 971, pp. 350-356, and particularly No. 15, p. 354, and Dalloz, Codes annotés, art. 971, No. 14, and No. 15, p. 598 shows that the court's opinion was that a nullity resulting from the notary's being a beneficiary under a will could be confined to the legacy bequeathed to the notary, and would not affect the other dispositions in the will. These commentators maintain that it is only whenand to the extent thatthe notary public acts for his own private advantage, by writing a testamentary disposition in his own favor, that his act loses its public chararacter. The question whether such a nullity in a nuncupative will by public act should annul the whole will or should be confined to the legacy that is bequeathed to the disqualified legatee, has been the subject of discussion and dispute among the French commentators. Cf. Baudry-Lacantinerie et Colin, Traite de droit civil XI, Desdonations entre-vifs et des testaments II (3d Ed. 1905) No. 2012, p. 83, and Demolombe, Traite des donations entre-vifs et testaments IV, No. 173 p. 180. See also Tulane L.Rev. Vol. XI, No. 3, p. 495, April 1937."
We think it clear the vice of form in such a case relates only the clause directly affected thereby, and only that clause is stricken with nullity.
*335 Those portions of the judgment relative to the Obier heirs and the testamentary executor, being not responsive to the motion for judgment on the pleadings, were not properly included therein and the judgment is improper in that respect.
For the above and foregoing reasons, the judgment appealed from is reversed, and the case remanded to the District Court for trial on the merits, with all costs of this appeal as well as the motion for judgment on the pleadings in the Court below being taxed to the movers.
Reversed and remanded.