359 So.2d 232 (1978)
S. E. LEE, Jr., Plaintiff-Appellee,
v.
Doris Armstrong KINCAID et al., Defendants-Appellants-Appellees.
No. 13533.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1978.
Writ Refused June 9, 1978.
Ellis & Ellis by Carey J. Ellis, Jr., Rayville, for defendant-appellant-appellee Doris Armstrong Kincaid.
Voelker, Ragland, Brackin & Crigler by Frank Voelker, Jr., Lake Providence, for plaintiff-appellee.
Samuel T. Singer, Winnsboro, for defendants-appellants-appellees, Ann Armstrong Johnson and Mary Alice Armstrong Robinson.
Dimos, Brown & Erskine by Donald R. Brown, Monroe, for defendants-appellants-appellees, Clyde Robinson and Tom Jones.
Before BOLIN, PRICE and MARVIN, JJ.
BOLIN, Judge.
Plaintiff brought this declaratory judgment proceeding seeking to have the validity of a will determined. After finding the will was invalid as a nuncupative will by private act, because the testator had named one of the witnesses as a legatee in contravention of Louisiana Civil Code Article 1592[1], the trial judge upheld the instrument as a statutory will. One of the defendants appeals and we affirm.
Since we agree with the result reached by the trial court, but base our decision on different grounds, the issue is: May a legatee who has renounced his legacy serve as one of five witnesses to a nuncupative will by private act?
Plaintiff, the attorney who assisted the testator in the preparation and execution of two wills, is currently the attorney for the testator's estate. Defendants are the heirs of the testator and legatees, including a bank named as trustee for two of testator's grandchildren.
The testator confected two wills with plaintiff's assistance, which were intended *233 to be nuncupative by private act (C.C. Arts. 1581, 1582). Plaintiff served as one of five witnesses to, and was named as a legatee in, the second will, executed eight months after the first. The second will contained a substantially larger bequest to the testator's two grandchildren than did the first and reduced a bequest to appellant, one of the testator's daughters.
Shortly before the testator's death plaintiff became concerned that the second will might be subject to question due to his dual status as a legatee and witness; therefore, following testator's death, plaintiff proceeded to probate the first will rather than the second. The father of the two grandchildren who would benefit more from probate of the latter will, questioned the propriety of that proceeding; as a consequence of this challenge, plaintiff brought the present suit to have the second will declared valid. To remove his incapacity to be a witness therein (C.C. Art. 1592), plaintiff formally renounced his legacy before trial and asked that the second will be declared valid as a nuncupative testament by private act.
The trial court ruled plaintiff, a named legatee, incapable of serving as one of the five witnesses required by C.C. Art. 1581. Since this left only four witnesses to the will, the court held it invalid as a nuncupative will by private act for failure to have the required five witnesses. However, the trial court upheld the testament, finding it met the formal requirements of a statutory will (La.R.S. 9:2442 et seq.).
We hold the trial court erred in law in finding plaintiff, who renounced his legacy, could not be considered a competent witness for the purpose of rendering the testator's second will valid as a nuncupative testament by private act.
On its face the second will complies with the formalities prescribed in the Civil Code for nuncupative testaments by private act.[2] Pertinent to the point at issue in this declaratory judgment action, the document has been signed by the required five witnesses. The record contains the original of an authentic act of plaintiff's renunciation of his legacy. This act of renunciation signifies plaintiff will receive no legacy under the will.
The cardinal rule in construing testaments is that the intent of the testator be ascertained and given effect, if this can be accomplished without doing violence to the strict Civil Code requirements concerning formalities. Carter v. Succession of Carter, 332 So.2d 439 (La.1976).
The purpose of the statutory prescription of formalities for the execution of a will is to guard against mistake, undue influence, fraud or deception, and to ensure means to determine the will's authenticity. Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938); Succession of Michie, 183 So.2d 436 (La.App. 2d Cir., 1966).
Our reading of the second will leaves no doubt as to the testator's intention; each testamentary disposition is clearly spelled out; these dispositions indicate the testator's desire to benefit certain recipients to a greater degree than he intended eight months before, to the obvious detriment of defendant-appellant's interest. However, there is no indication of undue influence which might have contributed to this result. The defendant-appellant does not suggest *234 such influence, nor that the second will is not authentic. She suggests only that plaintiff attorney mistakenly violated a codal provision, thereby rendering null the most recent expression of the decedent's intentions.
We are unable to find judicial pronouncements concerning the effect of the proscription contained in C.C. Art. 1592 under circumstances where the witness-legatee has formally renounced his legacy. However, we find persuasive by analogy the decisions which have nullified bequests to notaries while declining to nullify in their entirety nuncupative testaments by public act. Succession of Purkert, 184 La. 792, 167 So. 444 (La.1936); Succession of Killingsworth, 194 So.2d 331 (La.App. 1st Cir., 1966), writ refused 250 La. 175,194 So.2d 738 (1967). See L. Oppenheim, Louisiana Civil Law Treatise, Volume 10, Successions and Donations, § 114.
In construing Civil Code Article 1592 as it applies to this case, we are confronted with the declaration that a "named legatee" cannot be a witness to a testament. These words of the statute possibly could signal a legislative intent to create an irrebuttable presumption of invalidity of the entire will if one of the witnesses thereto has been named a beneficiary by the testator; under this interpretation, the will's invalidity would result by operation of C.C. Art. 1595.[3]
There is an alternative and more plausible construction of the statutory language, however, which appears both logical and reasonable. Under this interpretation, the word "named" signifies nothing more than "identified by name," and the crucial determination at the probate of the will becomes the status of the witnesses then, i. e., whether or not any witness is in actuality a legatee at the time of probate so as to bring into operation the prohibition of C.C. Art. 1592 and its possible effect on the validity of the will (C.C. Art. 1959).
Since plaintiff formally renounced his bequest before the will had been offered for probate, there can be no question that this witness is not a legatee. By choosing the more liberal construction of the language of C.C. Art. 1592, we uphold the testator's intentions without doing violence to the rule requiring strict compliance with testamentary formalities.
Our holding is limited to the sole proposition that a legatee, who formally renounces his legacy prior to probate, may serve as one of five witnesses to a nuncupative will by private act.
Since we uphold the testator's second will in its intended form, we need not consider whether or not it may be also valid as a statutory will.
The judgment ordering the will filed for probate is affirmed at appellant's cost.
NOTES
[1] Art. 1592.

Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be.
[2] Art. 1581. A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.

Or it will suffice, if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will.
Art. 1582. In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least by two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign, must affix their mark.
This testament is subject to no other formality than those prescribed by this and the preceding article.
[3] Art. 1595. The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void.