410 So.2d 729 (1982)
John P. EVANS
v.
William E. EVANS et al.
Victor SCOTT and Ruby Chenault Scott
v.
William E. EVANS, Appalachian Insurance Company et al.
No. 81-C-1680.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied March 12, 1982.
*730 George K. Anding, Jr., of Watson, Blanche, Wilson & Posner, Baton Rouge, for defendant-applicant.
Claude F. Reynaud, Jr., of Breazeale, Sachse & Wilson, G. T. Owen, III, Judith A. Chevalier of Owen, Richardson, Taylor, Mathews & Atkinson, Pamela C. Walker, John Dale Powers of Sanders, Downing, Kean & Cazedessus, W. Steven Mannear, Baton Rouge, for plaintiffs-respondents.
DIXON, Chief Justice.
Hurl Cotner Scott executed a will in statutory form on April 5, 1977. In the will, she left seven particular bequests of property to seven legatees, and the remainder of her estate to Victor Scott and Willard Scott "share and share alike."[1] The testatrix died on November 26, 1977, leaving no descendants or siblings. Her succession was opened and the will probated. A judgment of possession was rendered on April 25, 1977, placing the legatees into possession according to the dispositions in the testament.
Shortly thereafter, one of the legatees, John P. Evans, attempted to sell the piece of real estate left to him as a particular bequest. During a title examination of the property, it was discovered that one of the residuary legatees, Victor Scott, had signed the will as a witness. The attorney conducting the examination for the purchaser rejected the title because he was of the opinion that a defect might exist in the title. John P. Evans then filed an action for a declaratory judgment, as did Victor Scott and Ruby Chenault Scott, to determine the validity of the testament. Named as defendants are all legal heirs of the decedent, known, unknown or absentee,[2] *731 Erwin LaRose, the attorney who drafted the will, and Appalachian Insurance Company, the attorney's professional liability insurer. An attorney was appointed to represent the defendants. The parties submitted the case to the court on twelve stipulations of fact.
Plaintiffs ask that the will be declared valid or that only the bequest to Scott be nullified. In the event the will is invalidated, plaintiffs seek damages against the attorney who prepared the will and his insurer. The trial court and the court of appeal held that only the legacy to Victor Scott was invalid and sustained the remainder of the testament. 399 So.2d 721. We granted certiorari to review the correctness of this decision.
The testament in the instant case was confected according to the Statutory Wills Act of 1952 (R.S. 9:2442 et seq.). R.S. 9:2442 E, governing the requirements for witnesses, states:
"A competent witness for the purposes of this Section is a person who meets the qualifications of Civil Code Articles 1591 and 1592, and who knows how to sign his name and to read the required attestation clause, and is physically able to do both."
As originally enacted, no reference was made in the statute to C.C. 1591 and C.C. 1592. In 1974, the legislature amended this provision, specifically incorporating the standards for competent witnesses found in these articles into the formalities for statutory wills.
C.C. 1591 provides:
"The following persons are absolutely incapable of being witnesses to testaments:
1. Children who have not obtained the age of sixteen years complete.
2. Persons insane, deaf, dumb or blind.
3. Persons whom the criminal laws declare incapable of exercising civil functions."
C.C. 1592 contains the following prohibition:
"Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be."[3]
These are the only articles enumerated by the legislature in the amended version of R.S. 9:2442. The issue presented to us is whether C.C. 1595, which is the penalty provision for noncompliance with the testamentary formalities, also applies to statutory wills.
C.C. 1595 states:
"The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
Both of the lower courts observed that C.C. 1595 is not mentioned in R.S. 9:2442 as amended. The courts concluded that, in the absence of specific reference by the legislature, C.C. 1595 was not meant to apply to statutory wills.[4] Through this reasoning, the courts invalidated only the bequest to the legatee who was a witness to the will, leaving the rest of the will effective.
*732 This court has recognized that the Civil Code should be integrated into the Statutory Wills Act whenever the statutory will provisions are incomplete. Succession of Eck, 233 La. 764, 98 So.2d 181 (1957). In Eck, the wife of the universal legatee witnessed a statutory will. The court observed that the statute made no restriction "with respect to who may witness a will drawn under its provisions." Succession of Eck, supra, 233 La. at 775, 98 So.2d at 185. The court held that under those circumstances, the substantive law of Louisiana must apply. Since the wife did not fall within any of the incapacities listed in the Code, the will was not invalidated. The court's holding in this regard has been discussed with approval.[5]
Here, also, the legislature has not delineated the consequences of noncompliance with C.C. 1591 and C.C. 1592. Therefore, we must look to other statutory materials, particularly the Civil Code, for an answer.[6] Under C.C. 1595, failure to comply with the requirements enumerated in these articles results in invalidity of the will in its entirety. Absent some express statement by the legislature to the contrary, we are bound to declare the will null and void.[7]
It is a fundamental principle of statutory construction that laws concerning the same subject matter must be construed with reference to each other. C.C. 17; see State v. Brady, 310 So.2d 593 (La.1975). In this case, C.C. 1574 through C.C. 1595 are found in Book III, Title II, Section 2 of the Code designated "General Rules on the Form of Testaments." C.C. 1595 follows C.C. 1591 and C.C. 1592, describing the consequences of a failure to heed the prohibitions in the preceding articles. C.C. 1591 and C.C. 1592 merely disqualify certain persons from acting as witnesses to a testament; they do not explain the consequences of violation of the prohibitions. C.C. 1595 clearly and unequivocally outlines the sanctions for the preceding articles.
The court of appeal found Succession of Roussel, 373 So.2d 155 (La.1979), factually distinguishable and therefore not controlling. In Roussel, a nuncupative will by private act was contested on the ground that only four witnesses resided in the parish where the will was executed instead of the requisite five. This court held that the entire will was void, applying the penalty of C.C. 1595 to C.C. 1581. We stated:
"A material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even suggestion *733 or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.
. . . . .
The requirements of Article 1581 that `[a] nuncupative testament, under private signature, must be ... in presence of five witnesses residing in the place where the will is received' are mandatory and Article 1595 declares they `must be observed; otherwise the testaments are null and void.' ..." 373 So.2d at 157-158.
Those litigants who favor upholding the will suggest renunciation by Victor Scott of his bequest as an alternative means to sustain the will. They cite Lee v. Kincaid, 359 So.2d 232 (La.App.1978), writ denied, 360 So.2d 198, in support of their position, urging that renunciation by Scott would permit us to preserve the testatrix's intent as to the other dispositions in the will while simultaneously complying with the codal formalities in C.C. 1592. We agree that renunciation by a legatee who is also a witness might serve as an appropriate vehicle to cure a defect which existed at the time of its execution. However, this possible solution is not presently available; the legacy has not been renounced. Victor Scott, along with Ruby Chenault Scott, suggested renunciation by Victor as an alternative means of upholding the will in an amended petition and in a trial brief. Nonetheless, on appeal, Victor Scott filed a brief independently, asking that the lower court's judgment invalidating the bequest to him be overturned and his bequest reinstated. He filed no brief in this court and did not join in the brief filed by Ruby Chenault Scott. Lee v. Kincaid, supra, presented a different situation. In Lee, the plaintiff brought suit to have a nuncupative will by private act declared valid. The plaintiff was a named legatee in the will and also witnessed the will. To remove his incapacity to act as a witness, the plaintiff formally renounced his legacy before trial. The renunciation was already accomplished, and the record contained the authentic act of renunciation by the legatee-witness. The result reached by the court was correct. At the time of probate, the witness was not a legatee under the will; hence, the prohibition in C.C. 1592 did not exist.
Even if Victor Scott now wished to renounce, the time for him to do so has passed. The Civil Code provisions relating to acceptance and renunciation apply to both testate and intestate successions. C.C. 976. According to C.C. 1031, an heir (or legatee) may renounce the succession at any time within the longest prescription of the rights to immovables, "provided he has done no act to make himself liable as heir."[8] Victor Scott executed the affidavit for probate of the testament and is recognized as a legatee in the judgment of possession.[9] Therefore, he has expressly accepted the *734 succession thereby making himself liable as heir and preventing a belated renunciation. See C.C. 988, C.C. 1424.
It has been suggested in brief that a renunciation is not barred by a prior acceptance. The only support for this position is found in Poultney's Heirs v. Cecil's Executor, 8 La. 321 (1835), wherein the court in dicta indicated that, under the Code of 1808, an heir could renounce after having accepted, and then accept again "at a later date." Cf. Clauss v. Burgess, 12 La.Ann. 142 (1857). This language is surplusage and not to be given much weight. The Code unequivocally declares in C.C. 1009 that:
"The heir, who is of age, can not dispute the validity of his acceptance, whether it be express or tacit, unless such acceptance has been the consequence of fraud practiced or violence exercised against him; he never can urge such claim under a pretext of lesion."
Although this article does not expressly forbid renunciation of a prior acceptance, it clearly states that an acceptance cannot be disputed in the absence of fraud or violence. Such strong language demonstrates the irrevocable nature of an acceptance; it was not intended that an acceptance could be lightly revoked.[10] Therefore, we hold that Victor Scott, having unconditionally accepted the succession, cannot now revoke that acceptance in order to cure the testament with a renunciation of his bequest. The material deviation from the prohibition in C.C. 1592 against a legatee acting as a witness renders the will as a whole null and void under C.C. 1595. The succession must therefore be distributed pursuant to the laws of intestacy.
Plaintiffs next urge their demand for damages against the attorney who prepared the testament and his malpractice insurer. The record indicates that the parties stipulated that only two issues were "presented to this Court at this time" namely, whether or not the will was valid and, if not, whether a renunciation by Victor Scott could validate the will. The parties provided that "[a]ny issues remaining after resolution of the above submitted issues, including any question of damages, will be heard and/or tried at a later date, if necessary or required." Thus, the issue of the attorney's liability to plaintiffs has not yet been tried at the district court level. We therefore remand the case to the trial court for a trial of this issue.
For these reasons, the judgment of the lower courts is reversed, at respondents cost; the testament of Hurl Cotner Scott dated April 5, 1977 is declared invalid; the case is remanded to the district court for further proceedings in accordance with this opinion.
MARCUS, LEMMON and BLANCHE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I do not consider that art. 1595 of the Civil Code, which provides that "[t]he formalities, to which testaments are subject by the provisions of the present section must be observed; otherwise the testaments are null and void" (emphasis added), applies to statutory wills. Statutory wills are provided by La.R.S. 9:2442, which, as originally enacted, only required the presence of two witnesses to be valid. In 1976, the legislature amended the statute, specifically incorporating the standards for competent witnesses found in arts. 1591 and 1592 of the Civil Code. These are the only articles enumerated by the legislature in the amended version of La.R.S. 9:2442. Article 1595 is not mentioned. Accordingly, I do not consider that it was intended that art. 1595 was to apply to statutory wills. Since statutory wills cannot be witnessed by legatees, the *735 bequest to the legatee who was a witness should be invalidated, leaving the remainder of the will valid. Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
C.C. Art. 1592, reflecting a concern for the freedom of the testator, is designed to prevent a witness' undue influence or fraud upon the testator by prohibiting a person from being both a legatee and a witness. The court can serve that purpose by voiding the legacy to the witness, while still achieving the desirable goal of effectuating the testator's intention as far as possible.
I would hold that C.C. Art. 1592 contains its own sanction (the voiding of the legacy) and that C.C. Art. 1595 does not apply. The judgment of the lower courts should be affirmed.
BLANCHE, Justice (dissenting).
I respectfully dissent for reasons assigned by Lemmon, J.
NOTES
[1] The testament appears in the record as follows:

"Last Will and Testament
STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
I, Mrs. Hurl Cotner Scott, widow of Robert E. Scott, being of sound mind and knowing the uncertainty of life, do make this my last will and testament, revoking all former wills.
I designate and appoint Victor Scott executor of this will and my estate and I dispense him from furnishing bond.
1. I leave and bequeath unto Mrs. J. Ken Walters, 670 Bromley Drive, Baton Rouge, Louisiana 70808, my red gold diamond ring and my diamond cluster ring.
2. I leave and bequeath unto Mrs. Lillie Mae Phillips, 2655 Washington Avenue, Baton Rouge, Louisiana, the sum of $1,000.00 cash.
3. I leave and bequeath to Mrs. Zelma Vienne, 847 West Grant Street, Baton Rouge, Louisiana 70808, my diamond wrist watch, diamond engagement ring and my fur jacket.
4. I leave and bequeath unto Anna Mae Evans, 5601 Queensborough Drive, N.E., Atlanta, Georgia, my diamond pin and earrings and my diamond wedding ring.
5. I leave and bequeath unto John P. Evans, 5601 Queensborough Drive, N.E., Atlanta, Georgia, the land and improvements located at 1890 Blouin Avenue, Baton Rouge, Louisiana.
6. I leave and bequeath unto Boyd A. Evans, 117 Beau Chere Drive, Mandeville, Louisiana 70448, the sum of $10,000.00 cash.
7. I leave and bequeath unto John P. Evans and Boyd A. Evans, share and share alike, all of the household furniture, fixtures and contents located in my house at 1890 Blouin Avenue, Baton Rouge, Louisiana.
8. I leave and bequeath the remainder of my estate of every nature and kind unto the two living brothers of my late husband, Victor Scott and Willard Scott, share and share alike.
I desire that Erwin A. LaRose act as attorney for my succession and attorney for the executor of my estate.
This testament, consisting of two pages, has been executed at Baton Rouge, Louisiana, this 5th day of April, 1977.
 s/ Mrs. Hurl Cotner Scott
 Mrs. Hurl Cotner Scott
This testament has been signed on each of its pages by the testatrix, Mrs. Hurl Cotner Scott, in our presence, and declared by the testatrix, in our presence, to be her last will and testament, and in the presence of the testatrix and of each other, we, the undersigned Notary and witnesses, have hereunto subscribed our names, this 5th day of April, 1977.
WITNESSES:
s/ Jacqueline A. Fisher
 s/ Mrs. Hurl Cotner Scott
 Mrs. Hurl Cotner Scott
s/ Victor I. Scott
 s/ Erwin A. LaRose
 NOTARY PUBLIC"

[2] Certain legal heirs were listed in the petitions by name: William E. Evans, Herbert Miller, Lincoln Miller, Virley Miller, Mrs. Martin Lloyd, Mrs. Noble King, John P. Evans, and Boyd A. Evans. Three first cousins of the decedent intervened in the suit.
[3] The Code Civile of France contains a corresponding requirement. See Code Civile art. 975 (1804). Planiol interprets the article to forbid legatees serving as witnesses, without regard to the value of their bequest. 3 Planiol, Civil Law Treatise No. 2711 (La. Law Inst. transl. 1959).
[4] At least one appellate court has reached the opposite inference. In Succession of Melancon, 330 So.2d 679, 682 (La.App. 1976), the court concluded:

"The amendment of LSA-R.S. 9:2442 following Succession of Gordon, supra, and Woodfork v. Sanders, supra, appears to constitute a clear legislative expression that the provisions of our civil code generally applicable to all wills and not in conflict with LSA-R.S. 9:2442, likewise apply to the statutory will...."
In Succession of Gordon, 257 La. 1086, 245 So.2d 319 (1971), the court held by a plurality vote that R.S. 9:2442 did not require a date in the testament. In Woodfork v. Sanders, 248 So.2d 419 (La.App. 1971), writ denied, 259 La. 759, 252 So.2d 455, the court held that R.S. 9:2442 did not prohibit a legatee from acting as a witness. Both of these decisions were subsequently overruled by legislative amendments mandating these formalities in statutory wills, as in codal wills.
[5] See, Oppenheim, The Testate Succession, 36 Tul.L.Rev. 1, 14 (1961).
[6] We have recognized that our statutory will is based on statutory wills derived from common law states which can be traced to the English Statute of Frauds, rather than civilian law. Succession of Porche, 288 So.2d 27 (La. 1973); Succession of Gordon, supra; Succession of Morgan, 257 La. 380, 242 So.2d 551 (1970). The Statute of Frauds declares:

"... [A]ll devises and bequests of any lands and tenements ... shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses, or else they shall be utterly void and of none effect." Statute of Frauds (1677), 29 Car. II, c. 3, xii.
The majority of common law states only invalidates gifts to attesting witnesses, permitting the remainder of the will to stand. See, 46 Tul.L.Rev. 558, 561 (1971).
[7] The court of appeal realized that, if C.C. 1595 were found to apply, there would be no alternative but to invalidate the entire will since C.C. 1595 clearly states that the testament is null and void, not just the bequest.

Much reliance has been placed by the proponents of the will and by the court of appeal upon our decision in Succession of Purkert, 184 La. 792, 167 So. 444 (1936). That case involved a nuncupative will by public act in which the testatrix bequeathed the balance of her estate to the notary public. The court held that the bequest to the notary was null but upheld the rest of the will. In Purkert, as opposed to the case now before us, the validity of the whole will was not before the court as the heirs only attacked the residuary clause and did not seek to completely invalidate the will. See, Oppenheim, Louisiana Civil Law Treatise, Successions and Donations, vol. 10, § 114, p. 217 (1973). Had the court been faced with this question, it has been surmised that the court would probably have declared the will invalid in its entirety. See 11 Tul.L.Rev. 495, 497 (1936). But see, Oppenheim, supra.
[8] The Civil Code of 1808 contained a similar article, although the wording was somewhat broader:

"In like manner, so long as the prescription of renunciation is not determined, the heir may still renounce, provided he has made no act of heir." Dainow, Compiled Edition of the Civil Codes of Louisiana (1972).
In amending C.C. 1031 in 1870, the redactors added the phrase "make himself liable." Even under the amended article, Victor Scott is precluded from renouncing; there is no doubt but that acceptance of a succession renders the universal legatee liable for "the debts of the succession, according to the same rules and under the same exceptions as heirs." C.C. 1424.
[9] C.C.P. 3062 states:

"The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the deceased of the parties recognized therein, as heir, legatee, surviving spouse in community, or usufructuary, as the case may be, and of their right to the possession of the estate of the deceased."
While the judgment of possession establishes the relationship of the legatees to the testator, it is only entitled to prima facie validity and is not crucial to the determination of whether a legatee could renounce. Rather, it is the legatee's acceptance of the succession by taking an active role in the probate of the will and his effort to preserve his portion of the succession in this litigation which eliminates the possibility of a subsequent renunciation.
[10] C.C. 1025, located in the articles on accretion of succession property, intimates that a renunciation following an earlier acceptance is permissible. This article provides that "when an heir, who has already accepted, has caused his acceptance to be rescinded," his portion need not be accepted by the other accepting coheirs. It is important to note that the article does not speak of a renunciation; on the contrary, it deals with a rescission, the situation described in C.C. 1009; should an heir or legatee successfully contest the validity of his acceptance on the ground of fraud or lesion, he may rescind his acceptance.