CHEHARDY, Judge.
This appeal is an attempt to annul a statutory will, because one of the legatees was the notary public before whom it was executed. The district court found the will valid because the notary had renounced the legacies by authentic act. The opponents of the will have appealed.
Margaret St. Pierre Rome, widow of Frelson Rome, died on December 10, 1983. She left no forced heirs. Her statutory will, dated October 8, 1981, underwent ex parte probate on December 14, 1983. The testatrix made special legacies of $50,000 each to four charitable organizations (ap-pellees herein), smaller special legacies to several individuals, and the following special legacies to Michael K. Heltz, the notary who executed the will:
*1272 “(8) To Michael K. Heltz, my poodle, Mit-sey, together with the sum of $1,000 to be used for her care and upkeep.
“(9) To Michael K. Heltz all of my rights, title and interest in and to Lot 2-A, North Sherwood Estates Subdivision, having the present municipal No. 12065 Florida Boulevard, on the condition that he pays off in full the mortgage and mortgage note due to Louisiana National Bank of Baton Rouge.”
The will also named Heltz as trustee in several bequests made to minors. Further, the will made him co-executor and attorney for the estate, stipulating he was to receive a fee for his services in these capacities in addition to any legacy to him. Johnnie Pierce was named co-executrix. Finally, the will named Omer St. Pierre (decedent’s brother) residuary legatee of thirty-three and one-third percent of the remainder and Craig St. Pierre and Jason St. Pierre (decedent’s nephews) conjoint residuary legatees of sixty-six and two-thirds percent of the remainder. Craig’s and Jason’s share was placed in trust for a limited period.
The poodle died before the will was probated and therefore that legacy lapsed. According to the inheritance tax return filed in the succession proceedings, the gross value of the estate was $928,463.38 and the value of the real estate bequeathed to Heltz was $215,552. (It was valued on the sworn descriptive list at $331,078.)
On January 15, 1985, while the estate was still under routine administration, the appellants herein filed a rule to show cause why the testament should not be annulled and the executors removed. The opponents of the will are Omer St. Pierre, Ralph St. Pierre and Kenneth St. Pierre, brothers of the decedent, and Anna Mae Oubre St. Pierre, tutrix of one of the special legatees, Todd St. Pierre. (Prior to executing the will of October 8, 1981, Mrs. Rome had executed two other wills, one dated February 5, 1981 and one dated May 4, 1979. Both contained substantially different provisions from the will in contest.)
In the trial court the opponents of the will asserted that a notary public is prohibited from receiving a bequest in a will in which he has acted in his official capacity; they argued the entire will is invalid as a result of these bequests.
Immediately prior to the trial of the rule to annul the will, Michael Heltz filed in the record an authentic act in which he renounced the legacies to him. Some months before he had filed the state inheritance tax return and had paid from his personal funds the inheritance tax due on the legacy to him, $21,255.20.
The opponents to the will contended, first, that the will was invalid ab initio; secondly, that the renunciation had no effect on the validity of the will because Heltz had already accepted the succession and the will had already been probated, and because the will was invalid from its inception and the vice of form could not be cured by the renunciation. They stipulated there was no issue of undue influence and the only question was compliance with statutory requirements regarding formalities.
In its reasons for judgment, the trial court stated it was obligated to uphold the validity of the testament if at all possible. The court concluded that Heltz had never accepted the legacies, despite his personal payment of his share of the inheritance tax and despite a letter to Omer St. Pierre in which he stated he had paid the inheritance tax on the Florida Boulevard property and planned to petition the court to transfer the property to him. The court found that these acts had been performed by Heltz in his capacity as executor and constituted neither an express nor a tacit acceptance of the legacy.
In addition the court concluded that because the legacy of the real estate was conditioned upon Heltz’s payment of the mortgage balance, which he had not yet done, the condition was not fulfilled and therefore Heltz could neither accept nor renounce the legacy, under LSA-C.C. art. 985.
Based on all these factors the court found that the renunciation was timely filed and was fully effective. The court did not specifically address the question wheth *1273 er the will was incurably defective due to Heltz’s being named a legatee, but referred to the recent Supreme Court case of Evans v. Evans, 410 So.2d 729 (La.1982), in which the court stated in dicta that renunciation by a witness who is also a legatee might serve as an appropriate vehicle to cure a defect that existed at the time of a will’s execution.
VALIDITY OF THE WILL
The appellants contend that the will is nullified by Heltz’s joint capacity as legatee and notary therein and that the renunciation cannot remove the nullity.
Louisiana’s cardinal rule of construction and interpretation of wills is that the intention of the testator as expressed in the will must govern. Succession of Roussel, 373 So.2d 155 (La.1979). However, the intention to make a will, although clearly stated or proved, will be ineffectual unless the execution thereof complies with the statutory requirements; thus, a material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. Id.
“The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.” Succession of Roussel, supra, at 157.
LSA-R.S. 9:2442 prescribes the form and requirements for witnesses to a statutory will. It requires the will to be prepared in writing and to be dated and executed in the presence of a notary and two competent witnesses. The statute further provides,
“E. A competent witness for the purposes of this Section is a person who meets the qualifications of Civil Code Articles 1591 and 1592, and who knows how to sign his name and to read the required attestation clause, and is physically able to do both.”
LSA-C.C. art. 1591 describes those persons absolutely incapable of witnessing testaments; it is not applicable here. LSA-C.C. art. 1592 states, “Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be.” This prohibition in Article 1592 creates the problem here before us.
Appellants assert further that LSA-C.C. art. 1595 applies to void the entire testament. That article states, “The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void.” In Evans v. Evans, supra, our Supreme Court concluded that Article 1595, although not enumerated in R.S. 9:2442, applies to statutory wills. The court stated further, “Absent some express statement by the legislature to the contrary, we are bound to declare the will null and void.”
Appellees (Heltz, his co-executor Pierce, and the four legatee charities) point out there is no express prohibition in the Civil Code or statutory law preventing a notary public from being a legatee in a will in which the notary officiated. In Succession of Purkert, 184 La. 792, 167 So. 444 (1936), however, the court annulled a clause in a will making a residuary legacy to the testatrix’ executor, who was also the notary public. The Purkert court held that the notary as an instituted heir was incompetent to officiate as notary in making the will. (In the Purkert case, the opponents challenged only the residuary clause so the court nullified only that clause.) The court stated,
“Manifestly, the reason why article 1592, in that section of the Code, while declaring that one who is instituted as an heir or named as a legatee is thereby disqualified as a subscribing witness to the will, does not declare also that he is thereby disqualified to serve as notary public, is that a notary public cannot serve as such in any deed to which he is a party or which is made directly to him personally. The notary public acts in a quasi judicial capacity, not only in the making of nun-cupative wills by public act, but in many proceedings which are had before nota *1274 ries public.” Succession of Purkert, supra, at 448.
In Succession of Killingsworth, 194 So.2d 331 (La.App. 1 Cir.1966), writ refused 250 La. 175, 194 So.2d 738 (1967), the court stated that a bequest in a nuncupative will by public act to the officiating notary public did not annul the whole will and only the clause making the bequest was stricken with nullity. (We note, however, that conclusion was not essential to decision of the case because the court had already invalidated the will for other vices of form.)
We think it clear that a notary may not be named a legatee in a will in which he has officiated as a notary public.
As has been stated by several courts and commentators, the result mandated by Article 1595 is unduly harsh; annulling only the questionable legacy would accomplish greater justice. See Johnson, Developments in the law, 1981-1982: Successions and donations, 43 La.L.Rev. 585 (1982).
Both the district court and the appellees have relied heavily on the statement in the Evans case, supra, that “renunciation by a legatee who is also a witness might serve as an appropriate vehicle to cure a defect which existed at the time of its execution.” 410 So.2d at 733. In Evans the court referred with approval to Lee v. Kincaid, 359 So.2d 232 (La.App. 2 Cir.1978), writ refused 360 So.2d 198, that a legatee who formally renounces his legacy prior to probate may serve as one of five witnesses to a nuncu-pative will by private act.
The appellants here, however, argue that Heltz’s renunciation was too late because the will had already been probated and because he already had accepted the succession, either expressly or tacitly.
EFFECT OF RENUNCIATION
The district court found as a fact that Heltz had made no express or tacit acceptance of the legacy. As evidence of acceptance, the opponents of the will had offered Heltz’s payment of the inheritance tax on the lot by his personal check and a letter from Heltz to Omer St. Pierre stating that Heltz had paid his share of the inheritance taxes and planned to petition the court to have the building transferred to him. In that letter Heltz also said, “Once the transfer is made, the monthly note of $1,612.00 owed on the building will be my responsibility.”
The court concluded that the letter was insufficient to constitute an express acceptance, citing LSA-C.C. art. 989. The court determined that filing of the inheritance tax returns and payment of the taxes had been done in Heltz’s capacity as executor of the estate, therefore those actions were not a tacit acceptance.
The court also cited LSA-C.C. art. 985, which provides, “The heir who is instituted under a condition can not accept nor renounce the succession, before the condition has happened * * Relying on this, the court stated that because “the mortgage at Louisiana National Bank of Baton Rouge has not been paid off in full, Mr. Heltz as a legatee was prohibited * * * from accepting the succession.”
That statement contains an error of law, however: Article 985 also states that the heir of a conditional legacy cannot renounce the succession before the condition has happened. Thus, if the bequest of the Florida Boulevard property is considered a conditional legacy, Heltz’s renunciation can have no effect. This is important because the trial judge’s conclusions regarding the validity of the will were based on the effect of the renunciation.
However, LSA-C.C. art. 1638, regarding particular legacies, provides,
“If prior to the testament or subsequently, the thing has been mortgaged by the testator for his own debt or for that of another, or if it be burdened with an usufruct, he who is to pay the legacy is not bound to discharge the thing bequeathed of the incumbrance, unless he be required to do it by an express disposition of the testator.”
Therefore, a mortgage on an immovable in a succession will normally be paid by the heir or legatee unless the testator expressly requires the estate or another heir to pay the mortgage. See Succession of Waterman, 298 So.3d 731 (La.1974).
*1275 The first clause of the will here stated, “All debts, funeral expenses, Federal estate taxes, and administrative charges and costs are to be paid from the bulk of my estate * * (Emphasis added.) This clearly was an “express disposition” of the testator under Article 1638. The “condition” placed on the legacy of the real estate to Heltz, therefore, merely forestalled the effect of the Article 1638 “express disposition”—restoring the normal course of the law rather than placing a condition on the legacy.
Viewed in this way, the legacy of the Florida Boulevard property was not a conditional legacy, but instead was a legacy burdened with a mortgage and excepted from the testator’s disposition directing her estate to pay all debts. We conclude, therefore, it was not a conditional legacy and Heltz had the power to accept or renounce it before the mortgage was paid.
Regarding the acceptance/renunciation issue, LSA-C.C. art. 1009 states that acceptance is irrevocable. Thus one who has accepted a succession, either expressly or tacitly, is bound thereby and may not thereafter renounce it. LSA-C.C. art. 988 sets forth the requisites for acceptance:
“It is express, when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding.
“It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir.”
LSA-C.C. art. 989 defines “instrument,” as used in art. 988, as “any writing made with the intention of obliging himself or contracting as heir, and not a simple letter or note in which [he] may have styled himself the heir.”
Thus the statements in the letter from Heltz to Omer St. Pierre cannot be considered an express acceptance. And, because Heltz was also co-executor of the estate, his payment of the inheritance taxes cannot be considered an acceptance, either express or tacit, because that action was not limited exclusively to his quality of heir. See also, LSA-C.C. arts. 993, 994, 995.
Because we find no manifest error in the district court’s factual finding that Heltz had not accepted the succession, we are bound by it. Because there was no acceptance, therefore, he had the right to renounce the succession. His renunciation was by authentic act, as required by LSA-C.C. art. 1017, and we find it valid.
We find no merit to appellants’ claim that Heltz was precluded from renouncing the succession because the will had already been probated. The right of renunciation is barred only by the passage of time (LSA-C.C. art. 1030) or by prior acceptance of the succession (C.C. art. 1009). Although Lee v. Kincaid, supra, found the renunciation valid because it took place before probate, mere probate of a will does not estop an heir from renouncing a succession. Nor, in fact, does a judgment of possession prevent a legatee from renouncing:
“While the judgment of possession establishes the relationship of the legatees to the testator, it is only entitled to prima facie validity and is not crucial to the determination of whether a legatee could renounce. Rather, it is the legatee’s acceptance of the succession by taking an active role in the probate of the will and his effort to preserve his portion of the succession ⅜ * * which [would eliminate] the possibility of a subsequent renunciation.” Evans v. Evans, supra, at 733, n. 9.
None of the acts performed by Heltz were done in “an unqualified manner” as heir; they were performed also in his capacity as co-executor of the estate. See C.C. art. 988. We conclude his renunciation was valid to cure the defect caused by his receiving a legacy in the statutory will in which he officiated as notary public.
For the foregoing reasons, the judgment of the district court is affirmed. All costs of. this appeal are to be paid by appellants.
AFFIRMED.
BOWES, J., concurs with written reasons.