WARD, Judge,
dissenting.
I have reviewed this case, as we must, with a conscious bias toward upholding the testament of Charles Gresham. Lebleu v. Manning, 225 La. 1087, 74 So.2d 384 (1954). Nonetheless, I disagree with the majority’s conclusion that the will is valid; the will is invalid because it was witnessed by the sole legatee, a person disqualified as a witness by Civil Code Article 1592. The Statutory Wills Act, its legislative history, and the jurisprudence all indicate that from the date of its enactment the Statutory Wills Act was intended to be read with the provisions of the Civil Code, and where incomplete, to be supplemented by those codal provisions not in conflict. The Fourth Circuit Woodfork case, relied upon by the majority, is the only exception.
As the majority recognizes, the Statutory Wills Act, as it read in 1955 when Gresham made his will, provided neither qualifications nor disqualifications for the two attesting witnesses. The Civil Code, however, provided the following incapacities directly applicable in 1955 to witnesses to codal wills:
1. Children who have not obtained the age of sixteen years complete.
2. Persons insane, deaf, dumb or blind.
3. Persons whom the criminal laws declare incapable of exercising civil functions.
4. Married women to the wills of their husbands.
Art. 1591.
and,
Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be.
Art. 1592.
In Succession of Eck, the Supreme Court, when considering the capacity of a witness to a will executed in 1956, under the same law in effect when Gresham made his will, referred to Civil Code Articles 1591 and 1592. The Court found that application of the codal incapacities was proper because, at the time, there were no qualifications in the Statutory Wills Act for witnesses to a will drawn under its provisions. The Supreme Court’s reference to the Civil Code to determine who was disqualified as a witness is a methodology to be followed; it is controlling, not obiter dictum, as the Woodfork opinion characterizes it.
*159 Yet, the majority relies solely upon this Court’s Woodfork decision. Woodfork, I submit, should not be followed. As I will explain, it was wrong when it was decided, but even if it has some validity as the majority believes, it is distinguishable from the case before us.
Woodfork was wrong because the Eck methodology was not obiter dictum, even assuming we are bound by common law stare decisis distinctions between dictum and the holding of a case. In Eck, the will was challenged because it was witnessed by the wife of the legatee. The Supreme Court held the Civil Code qualifications for witnesses were applicable, but even under the Civil Code, the wife of a legatee is not disqualified. While reasonable opinions may differ as to what is obiter dictum, our Supreme Court obviously does not consider the Eck methodology obiter dictum — to be ignored. To the contrary, the Supreme Court has itself cited Eck as authority for the rule of law that the Civil Code should be integrated into the Statutory Wills Act whenever the statutory wills provisions are incomplete. Evans v. Evans, 410 So.2d 729 (La.1982). This unreserved clear reliance upon Eck must surely indicate that our Supreme Court believes the Eck holding was authority for reference to the Civil Code and not obiter dictum.
Not only was Woodfork wrong when it distinguished Eck, it was wrong when it ignored this Court’s own opinion in Succession of Hackett, 187 So.2d 485 (La.App. 4th Cir.1966), and I am not satisfied that the majority opinion has sufficiently considered Hackett. In Hackett, this Court remanded the case to the Trial Court to give counsel an opportunity to “prove the identity of the legatee and ... determine the validity of the will” after it became apparent that one of the witnesses to the statutory will was a legatee. Woodfork rejected Hackett, finding that “counsel in Hackett did not afford the question much study” and that this Court had merely accepted counsel’s unstudied concession of the proposition that the Civil Code's disqualification of witnesses was applicable to the statutory will. I cannot believe that this Court would have blindly accepted an erroneous legal proposition, and entered a remand based upon that proposition, merely because the point was conceded by counsel. Rather, as I read Hackett, the Court found the incorporation of the codal requirements into the Statutory Wills Act so well established that the matter required no discussion. Therefore, I believe Hackett, like Eck, is controlling.
Woodfork has been severely criticized for ignoring Succession of Eck and Succession of Hackett. Additionally, commentators have pointed out the implausability of Woodfork’s premise — that the legislature intended literacy to be the only qualification for witnesses despite common and civil law traditions, firmly based upon public policy, which restricted witnessing of wills by legatees. Note, Successions — Statutory Will Valid although Witnessed by Legatee, 46 Tul.L.Rev. 558 (1972); Work of the Appellate Courts — 1970-1971, 32 La.L. Rev. 165, 203 (1972).
Woodfork itself was overruled by the legislature in 1974. Act 246, Sec. 1 of 1974 amended R.S. 9:2442 to expressly provide that a “statutory will ... shall be executed in the presence of a notary and two competent witnesses not otherwise disqualified under Article 1591 and 1592 of the Civil Code....” This amendment constitutes a “clear legislative expression that the provisions of our civil code generally applicable to all wills and not in conflict with R.S. 9:2442, likewise apply to the statutory will.” Succession of Melancon, 330 So.2d 679, 682 (La.App. 3rd Cir.1976).
Additionally, Woodfork, if not wrong, and if it has some validity, is factually distinguishable from the instant case. In 1964 after Charles Gresham made his will, the Statutory Wills Act was amended to provide that “those who know not how or are not able to sign their names, and those who know not how or are not able to read, cannot ... be attesting witnesses” to a will made under the Act. Primarily on the basis of these disqualifications which were added to the Statutory Wills Act in 1964, *160 Woodfork held that the codal qualifications for testamentary witnesses were not applicable to a statutory will. Although the Woodfork opinion (incorrectly) characterized the Eck holding as obiter dictum, Woodfork also distinguished Eck because when the Eck will was written, there were no disqualifications in the Statutory Wills Act; when the Woodfork will was written there were. The disqualifications which were added by the 1964 amendment only disqualified as witnesses those persons who were unable to read and sign their names, but since the Statutory Wills Act was no longer “silent” as to disqualifications, Woodfork reasoned that only those disqualifications in the Act were applicable, and hence reference to the Civil Code was inappropriate.
I find Woodfork factually distinguishable from the case before us in the same way that Woodfork distinguished the Eck case. Simply put, when Charles Gresham executed his will in 1955, the Statutory Wills Act contained no disqualifications for witnesses, just as it contained none when the Eck will was executed in 1956. Gresham’s will was executed before the 1964 amendment, relied upon in Woodfork, which placed disqualifications for witnesses in the Statutory Wills Act. Thus, Eck and not Woodfork should determine the validity of Gresham’s will.
Consequently, even if Woodfork has some validity, it is applicable only to those testaments executed after the 1964 amendment, and before the effective date of Act 246 of 1974, which applies the disqualifications of the Civil Code to statutory wills. Since Gresham’s will was executed before the 1964 amendment, Woodfork is inapplicable, and for the same reason, it cannot be said that Gresham relied upon Woodfork when he executed his testament.
In sum, the law at the time of the execution of the will as well as the law as it stood on Gresham’s date of death, following the 1974 amendment to R.S. 9:2442, mandate anullment of the will, because in 1955 when Charles Gresham executed his will and in 1979 when he died, a legatee was incapable of witnessing a will.