### No. 2606.—Succession of Jean Pardo.

The parish court has jurisdiction over a contest about the validity of a will, without reference to the amount involved in the testament.

A witness who does not understand the language in which the testament is written is not a competent witness to the will.

A nuncupative will, under private signature is null, if it does not contain the number of subscribing witnesses required by law, who are competent to testify that it was dictated and written in their presence, or that it was read to them at the time of signing.

A PPEAL from the Parish Court, of Iberville.   *Moore,* Parish Judge. *Rousseau & Estevan* and *Armond Pitot,* for executor, appellee. *Barrow & Pope* and *John Marcot,* for opponents, appellants.

Ludeling, C. J.   Ambroise Pardo presented to the parish court of Iberville, for probate, a written instrument, purporting to be a copy of the last will of Jean Pardo, which, it is alleged, was lost.

The heirs at law of Jean Pardo opposed the probating, on the following grounds:

That the requisite number of witnesses did not sign the will, as Forester Pardo, one of the subscribing witnesses, was not a resident of the parish of Orleans, the place where the will was made; and Alex. Kelly, another of the subscribing witnesses, did not speak or understand French, in which language the testament was written.

That it is not proved that the deceased signed the will.

That the will is inoperative, because there is no testamentary disposition, and there are no debts to be paid, etc.

And that the widow and heirs have been put in possession of all the property of the succession.

The parish court allowed the probating of the will, and ordered its execution.

The opponents have appealed.

In this court it has been urged that the judgment of the parish court is a nullity, because the parish court was without jurisdiction *ratione materiæ*, as the amount of the inventory of the succession exceeds five hundred dollars.

The contest is in relation to the validity of the will. It is purely probate in its nature; and in Hebert, tutor, *v.* Winn and others, we held that the parish court had jurisdiction of such cases.

There were six subscribing witnesses to the act, which was intended to be a nuncupative will by private act.

Forester Pardo, one of the witnesses, did not reside in the place where the will was made. Alexander Kelly, another of the subscribing witnesses, did not sufficiently understand the language in which the will was dictated and written to enable him to be a competent witness to the testament. Kelly testifies that he required the person who wrote the will to translate it to him, so that he might understand what he was signing. Emma Pardo says: "I have known Mr. Alexander Kelly about five years. Was acquainted with him in 1863. My mother tongue is French. Mr. Kelly never conversed with me in that language. He could say yes, or no, madam, and such ordinary words, in French, and that was the extent of his knowledge of the French language. I have never heard him converse with any one in the French language."

Forester Pardo says: "He is acquainted with Alexander Kelly. Knew him for a year previous to the year 1863. He was intimately acquainted with him during that time. He was courting a cousin of witness, a daughter of A. A. Pardo, and whom he afterwards married. His mother tongue was Spanish, and he spoke nothing but Spanish in his own family. In A. A. Pardo's family French was generally spoken. When Mr. Kelly came to visit Mr. Pardo's family they spoke English to him and in his presence. The reason was that he could not understand French, and they could not speak Spanish. *   *   * Witness knew Mr. Kelly could not understand French, for the reason that questions were asked him in that language, he could not answer them otherwise than by yes or no, and from his answers showed that he did not understand what was asked him."

It appears to us sufficiently proved that Kelly did not understand the French language, and therefore could not know whether the will contained the dispositions dictated by the testator. It was impossible for him to compare what was written with what was spoken by the

testator. Hence he could not testify to the faithful execution of the will; and for all legal purposes in this case, he might, as well have been deaf. 11 An. 676; 14 An. 233.

The will, therefore, is attested only by four witnesses residing in the place where the will was made, and this is not a compliance with the law. C. C. article 1574.

It is therefore ordered that the judgment of the lower court be annulled; and it is adjudged and decreed that the will be declared invalid, and that petitioner's demand be dismissed, with costs in both courts.