373 So.2d 155 (1979)
SUCCESSION of Lawrence ROUSSEL.
No. 63698.
Supreme Court of Louisiana.
June 25, 1979.
*156 Rodney J. Madere, New Orleans, for plaintiff-applicant, Henry Roussel.
Larry C. Becnel, Vacherie, for defendants-respondents Mrs. Aldonia Alexis Roussel, Executrix and Legatte and Mrs. Olamae Roussel Joshua, legatee.
SUMMERS, Chief Justice.
Henry Roussel, the son of the decedent Lawrence Roussel, brought suit in the Twenty-third Judicial District Court in and for the parish of St. James, contesting the validity of his father's will. The will purports to be a nuncupative testament by private act which had been offered for probate and allowed with authorization for letters testamentary to issue. Henry Roussel alleges that fewer than five of the six witnesses who signed the will were residents within the parish of St. James at the time the will was signed.
The case was tried, and judgment was rendered in favor of defendants dismissing Roussel's suit. Roussel appealed devolutively. With one concurrence and one dissent, a three-judge panel of the Court of *157 Appeal affirmed the judgment of the trial court. 365 So.2d 908. We granted certiorari. ___ So.2d ___.
A nuncupative will by private act is governed by Article 1581 of the Civil Code which requires that it be received "in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place." Article 1594 of the Civil Code further explains that "By residence of the witnesses in the place where the testament is executed, is understood their residence in the parish where that testament is made." According to Article 1595, "The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
Lawrence Roussel dictated the instrument at issue here to a notary on August 14, 1969 in Vacherie, Louisiana. Six witnesses signed the document. Four of the six witnesses were residents of St. James Parish at the time. Vacherie, where the will was confected, is a community situated partly in St. James and partly in St. John the Baptist Parish. It is also evident that the will was received in that part of Vacherie which lies within St. James Parish.
The remaining two witnesses were Whitney P. Jasmin, Jr., and his wife Yolanda, who lived together a few miles across the parish boundary in the parish of St. John. The Jasmins, then, were residents of the same place; and if one was a resident within or without the place of the reception of the will, the other was also a resident there.
Whitney Jasmin had been a lifelong resident of St. James Parish. However, at the age of twenty-one he married Yolanda in July 1964, and they went to live with Yolanda's parents in St. John the Baptist Parish. While living in St. John Parish they registered to vote there in July 1966. From that time, until August 1969 when they witnessed the will, he voted nine times and she eight times in St. John Parish.
About four months after they witnessed the will, Whitney purchased a lot in St. James Parish. In the act of sale the notary set forth Whitney's marital status and wrote that he was a resident of St. James Parish. At the trial in 1977 Whitney testified that the lot was acquired with the expectation that he would at some time build a house there and move to St. James Parish. However, this plan was never carried out, for in 1975 while still residing with his wife's parents, he purchased land in St. John Parish. He began the construction of a house on that property and moved there in 1976. He was residing in that house at the time of the trial in 1977.
Whitney testified that prior to August 1969, and when he acquired the lot in St. James Parish in 1970, it was his intention to some day return to St. James Parish. However, he left his family home in St. James parish when he married Yolanda in 1964 and resided continuously in St. John Parish, either with his in-laws or in his own house, until the time of the trial in 1977a period of thirteen years. Notwithstanding Whitney's desire to return to St. James Parish at one time, he did not in fact return to reside there, either temporarily or permanently, after leaving in 1964.
In considering the facts recited here we recognize the cardinal rule of construction and interpretation of wills, long applied in this State and generally in other jurisdictions, that the intention of the testator as expressed in the will must govern. But we are equally cognizant of the proposition that the intention to make a will, although clearly stated or proved, will be ineffectual unless the execution thereof complies with the statutory requirement.
A material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.
*158 The purpose of the statutes in prescribing formalities for the execution of wills is to guard against and prevent mistake, imposition, undue influence, fraud, or deception, to afford means of determining their authenticity, and to prevent the substitution of some other writing.
The requirements of Article 1581 that "[a] nuncupative testament, under private signature, must be ... in presence of five witnesses residing in the place where the will is received" are mandatory and Article 1595 declares they "must be observed; otherwise the testaments are null and void." Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938); Norton v. Comstock, 151 La. 859, 92 So. 363 (1922); Succession of D'Auterive, 39 La.Ann. 1092, 3 So. 341 (1887); Succession of Pardo, 22 La.Ann. 139 (1870); Oppenheim "The Testate Succession", 36 Tul.L.Rev. 1 (1961).
Because Whitney and Yolanda Jasmin were not residents of St. James Parish where the will was received, only four qualified witnesses were present and the will did not comply with the express terms of the Code. The will is therefore invalid.
For the reasons assigned, the judgment of the Court of Appeal is reversed.
CALOGERO, J., dissents for the reasons given in the opinion of the Court of Appeal.