STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**23-43**

SUCCESSION OF

ELDRICK RAY THOMAS

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 22-P-10087-A
HONORABLE GREGORY J. DOUCET, DISTRICT JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Gary J. Ortego, and Wilbur L. Stiles, Judges.

**REVERSED AND RENDERED.**

**Vanessa Harris**
**Attorney at Law**
**221 North Main Street**
**Opelousas, LA 70570**
**(337) 942-6788**
**COUNSEL FOR DEFENDANT/APPELLEE:**
　　**Cynthia Thomas Benjamin**

**Charles T. Cravins**
**Frank P. Trosclair, Jr.**
**CRAVINS TROSCLAIR, APLC**
**P. O. Drawer 1149**
**Opelousas, LA 70571-1149**
**(337) 948-3007**
**COUNSEL FOR DEFENDANT/APPELLANT:**
　　　**Courtney Thomas Henry**

**ORTEGO, Judge.**

This is a succession case wherein the daughter of the decedent contested a will appointing the decedent's niece as the universal legatee. The daughter's challenge of the will is based on alleged fraud by the witnesses to the will and alleged failure by the drafter of the will to follow state supreme court jurisprudence, *Succession of Liner*, 19-2011 (La. 06/30/21), 320 So.3d 1133, in constructing the will's attestation clause.

The trial court found the will valid pursuant to La.Civ.Code art. 1577. The daughter of the decedent appeals.

## FACTS AND PROCEDURAL HISTORY

This case arises out of the death of Eldrick Ray Thomas (the decedent). The decedent's daughter, Courtney Thomas Henry (Courtney) filed a petition to open intestate succession and request for appointment of notary to search for testament pursuant to La.Code Civ.P. arts. 2854 and 2855. Courtney alleged she was the sole intestate heir of the decedent but believed that a document purporting to be the decedent's last will and testament existed, but was invalid.

After the trial court appointed a notary to search for any purported testament of the decedent, two separate reports were filed showing a total of four (4) documents purporting to be the testament of the decedent. The four documents were:

1. A purported original testament, bearing a raised notary seal, dated June 7, 2021, retrieved from Juan Joseph of Williams Funeral Home. (Exhibit A).

2. A purported original testament, bearing a raised notary seal, dated June 7, 2021, retrieved from the decedent's niece, Cynthia Thomas Benjamin. (Exhibit B).

3. A "true copy" of a purported notarial testament dated June 20, 2018, retrieved from the law office of Frank Olivier. (Exhibit C).

4. A copy of a purported notarial testament dated October 12, 2021, retrieved from attorney Vanessa Harris, who had, in turn, retrieved the document from her client, Cynthia Thomas Benjamin. (Exhibit D).

On May 18, 2022, Cynthia Thomas Benjamin (Cynthia) filed a petition for recordation and execution of notarial testament. Courtney had filed an April 29, 2022 opposition to probate of testament. The trial court, in essence, consolidated the matters and set a hearing for May 27, 2022.

After a two-day hearing on May 27 and June 1, 2022, the trial court issued a judgment in favor of Cynthia declaring the June 7, 2021 notarial testament (Exhibit B) valid as to form, and declared that it be probated. The trial court also assessed Courtney with costs. The present appeal followed with Courtney alleging two assignments of error.

## ASSIGNMENTS OF ERROR

1. The Trial Court committed an error of law in finding the testament valid without performing a contextual analysis and excluding the issue of fraud, despite the evidence of fraud and the demonstrated risk of fraud attributable to the witnesses to the testament.

2. The Trial Court committed an error of law in failing to perform a **contextual** analysis of the deviations in form in an attestation clause in a testament as is required by *Succession of Liner*, []19-[]2011 (La. 06/30/21)[,] 320 So. 3d 1133.

*I.    Standard of Review*

Louisiana Civil Code Article 1577 states:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> > (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
> >
> > (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."
>
> Louisiana Civil Code Article 1577 provides that a notarial testament "shall" be executed in a certain manner. The word "shall" is mandatory. La.R.S. 1:3. In order to be valid as to form, (1) the testator must declare or signify in the presence of a notary and two witnesses that the instrument is his last will and testament; (2) the testator must sign his name at the end of the testament and on each separate page; and (3) the notary and two witnesses must sign a declaration in the presence of each other and the testator attesting that the formalities of La.Civ.Code art. 1577(1) have been followed. *Succession of Siverd*, 08-2383, 08-2384 (La.App. 1 Cir. 9/11/09), 24 So.3d 228. "A material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will." *Succession of Roussel*, 373 So.2d 155, 157 (La.1979). A clear reading of La.Civ.Code art. 1577(2) shows that the article provides an example of language that will satisfy this provision, but also plainly states that language "substantially similar" will suffice to meet form requirements.

*Succession of Faulk*, 22-249, p. 4 (La.App. 3 Cir. 10/26/22), 352 So.3d 1037, 1040.

In accordance with legislative intent, courts liberally construe and apply statutes in favor of maintaining the validity of the will if that will substantially

complies with the statute. *Liner*, 320 So.3d 1133; *Succession of Guezuraga*, 512 So.2d 366 (La.1987).

A trial court's determination that witnesses were present when the testator signed a will is subject to a manifest error review. *Succession of Pedescleaux*, 21-611 (La.App. 5 Cir. 5/11/22), 341 So.3d 1224.

In will contest cases, factual findings of the trial court are accorded great weight and will not be disturbed on appeal absent a finding of manifest error. *Succession of Daigle*, La.App. 3 Cir.1992, 601 So.2d 10.

II. *Fraud and the June 7, 2021 Will's Attestation Clause*

Appellant contends that the trial court erred in finding the testament valid without analysis of the deviations in form in an attestation clause and by excluding the issue of fraud attributable to the witnesses to the testament. We find merit to appellant's contentions.

A. *Attestation Clause:*

The attestation clause of the June 7, 2021 will is as follows:

> Signed and declared by ELDRICK RAY THOMAS, testator above name in our presence to be his last will and testament, and in his presence of each other, we have unto subscribed our name as witnesses, this 7th day of June, 2021, at Opelousas, St. Landry Parish, Louisiana within and for which the undersigned Notary Public is duly commissioned, qualified and sworn.

Under the attestation clause, the decedent's signature is above his printed name, as well as the signatures and printed names of witnesses Angela T. Lemon and Latasha S. Manuel. There is then a blank with "NOTARY PUBLIC" whereon Virginia M. Jones signed her name and notary number with her handwritten, printed name and a date, "6-7-2021", beneath the blank.

4

The fatal flaw in this attestation clause according to Courtney is that it includes the language "as witnesses" and does not include language that can be interpreted that the notary personally observed the decedent signing and declaring the document to be his last will and testament. Courtney argues that the language "as witnesses" specifies that the witnesses, and only the witnesses, personally observed the decedent's declaration and signing of the document. Thus, the clear and unambiguous language can only be interpreted to mean the decedent signed and declared the document to be his last will and testament in the presence of the witnesses and did not do so in the presence of the notary.

Citing *Succession of Ivey*, 17-653 (La.App. 3 Cir. 2/21/18), 238 So.3d 532, Courtney points out that the addition of language that changes the meaning of the clause which renders the clause insufficient under La.Civ.Code art. 1577 is grounds for finding the proposed will invalid. In *Ivey*, the word "me" appeared before the decedent's name in the attestation clause. This court found the proposed will invalid stating, "[w]ithout 'me,' the sentence indicates that the witnesses and notary are the declarants. Thus, treating 'me' as a typographical error and ignoring it completely changes the meaning of the sentence which is required to satisfy one of the formalities of an attestation clause." *Ivey*, 238 So.3d at 536-37. This court declared the will invalid, reasoning inclusion of extraneous language that changes the meaning of the sentence is more than a technical deviation from La.Civ.Code art. 1577.

We find merit to Courtney's argument. We are mindful of legislative intent and jurisprudence instructing us to apply statutes in favor of validating wills that substantially comply with La.Civ.Code 1577, in the absence of fraud. However, here, including "as witnesses" rather than either adding "and the undersigned notary

5

public" after "as witnesses" or simply omitting "as witnesses" changes the meaning of the clause. Accordingly, we find that the attestation clause of the June 7, 2021 will cannot reasonably be interpreted to substantially comply with La.Civ.Code art. 1577(2).

B.    *Alleged Fraud & Undue Influence*

Additionally, in *Guezuraga*, 512 So.2d at 368 (citations omitted), our supreme court pointed out that consideration of form deviations are done while mindful of fraud risk, stating:

> Where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity. It was the intent of the legislature to reduce form to the minimum necessary to prevent fraud. It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause. If they indicate an increased likelihood that fraud may have been perpetrated they would be considered substantial and thus a cause to nullify the will. If not, they should be disregarded.

Here, the attestation clause does not include language asserting that the notary personally observed the decedent declare and sign the document as his last will and testament. This failure aligns with evidence in the record and Courtney's allegation that a pattern of fraud exists when a document grants Cynthia Benjamin rights in relation to the decedent's property or affairs and is witnessed by Angela T. Lemon and Latasha S. Manuel. Given Courtney's allegation, we will review each document contained in the record as to that alleged pattern of fraud and the validity of the June 7, 2021 will.

Exhibit E is a sale dated October 14, 2021, allegedly signed by decedent, notarized by Martina D. Chaisson, and witnessed by Angela Lemon and Latasha Manuel in New Iberia, Louisiana. Cynthia admitted in her testimony that she received the proceeds from that sale. It is clear from the record that this sale was

invalid and involved fraud. The record established that the notary, Martina Chaisson, could not do business in Iberia Parish. Chaisson testified that she notarized the documents Cynthia brought to her that decedent allegedly signed, including Exhibit E, but the decedent and witnesses were not present. Additionally, witness Angela Lemon admitted that Chaisson was not present when she signed "some documents." Finally, witness Latasha Manuel testified that decedent only asked her to witness one document, but she appears as a witness on several that he signed, including Exhibit E and Exhibit B, the June 7, 2021 notarial will that the trial court found valid.

Exhibit F is a document granting power of attorney to Cynthia Benjamin over the decedent's medical and financial affairs. The document is dated October 7, 2021, allegedly signed by decedent, notarized by Martina D. Chaisson, witnessed by Angela Lemon and Latasha Manuel in New Iberia, Louisiana. As was the case with Exhibit E, it is clear from the record that Chaisson cannot do business in Iberia Parish. Further, Chaisson testified that she notarized the power of attorney, but no one was there when she signed it, Lemon admitted that Chaisson was not present when she signed "some documents," and Latasha Manuel testified that decedent only asked her to witness one document. Thus, the document was rightfully rejected by Belle Teche Nursing Home business office manager, Cheryl Bonin.

Exhibit G is comprised of two policy owner change requests signed by decedent and Cynthia Benjamin and notarized by Martina Chaisson. These requests attempted to change the policy owner from decedent to Cynthia Benjamin. One was dated September 24, 2021, while the other was undated. The insurance company that issued the policies rejected these documents because the decedent's signatures did not match those it had on file. Further, Chaisson admitted that she did not see

decedent sign the documents. Finally, Jerome Fontenot, the decedent's insurance agent and friend of "many years," visited the decedent at the nursing home and testified that the decedent never gave permission for Cynthia to be made owner of those policies.

Exhibit D is a purported notarial will dated October 12, 2021, at the top but October 11, 2021, at the bottom. The document specifically revokes decedent's will "dated August 30, 2021." It goes on to grant Cynthia Benjamin power of attorney over decedent's medical and financial assets and to bequeath Cynthia Benjamin ownership of all decedent's property. The one-page document is signed by decedent twice, notarized by Martina D. Chaisson, and witnessed by Angela Lemon and Latasha Manuel. Keeping with the pattern established in Exhibits E, F, and G, Chaisson testified that she notarized Exhibit D, but she wasn't present when the decedent or witnesses signed it, Lemon admitted that Chaisson was not present when she signed "some documents," and Latasha Manuel testified that decedent only asked her to witness one document. Thus, a review of the entire record before us shows Courtney provided sufficient evidence to prove a pattern of fraud in this case.

Given the above, we find the trial court erred in validating the June 7, 2021 notarial will. The attestation clause of that purported notarial will substantially deviated from the form set out in La.Civ.Code art. 1577(2) in light of the inclusion of the language "as witnesses." The record further evidences a pattern of fraud in this case. Thus, we nullify the June 7, 2021 will, and reverse the trial court's previous order to probate same.

*III.    Validity of the June 20, 2018 Will*

The record before us contains Exhibit C, a notarial will dated June 20, 2018. The will is signed by the decedent, notarized by Charles J. Fontenot, and witnessed by Patricia D. Nicko and Barbara L. Faul.  Appellant asks that this court either find that the decedent died intestate, or that Exhibit C is valid.

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164.

> While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. . . .

> In addition to the constitutional authority, and consistent with it, there is a very practical consideration which encourages our appellate courts to exercise their jurisdiction to review factual findings: judicial economy. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process.  Although the appellate court does not gain the benefit of personally viewing the witnesses, it does have a complete record and the constitutional authority to decide.

*Gonzales v. Xerox Corp.*, 254 La. 182, 320 So.2d 163, 165-66 (1975) (citations omitted).

Here, neither Courtney nor Cynthia assert that there is evidence outstanding regarding the decedent's disposition of his assets.  Further, neither asserts that the record before us is not complete. Thus, we will conduct a de novo review of whether the June 20, 2018 will is valid.

The June 20, 2018 will (Exhibit C) bequeaths all of the decedent's property to Courtney and LaShonda Davis to "share and share alike."  There is no evidence in

the record that this will is invalid. There is nothing in the language of the will that renders it invalid on its face. There was no argument made that this will is invalid due to fraud or any undue influences. Accordingly, we find and render that the June 20, 2018 notarial will is valid and order it probated.

## CONCLUSION

Courtney Thomas Henry assigns two errors to the trial court validating and ordering probate of a purported June 7, 2021 notarial will of Eldrick Ray Thomas. We find that the trial court erred in validating the purported June 7, 2021 notarial will, as the attestation clause substantially deviated from the form set out in La.Civ.Code art. 1577(2) in light of the inclusion of the language "as witnesses." The record further evidences a pattern of fraud in this case. Accordingly, we reverse the trial court's judgment in its entirety.

We find the record before us is complete. Therefore, we render that the June 20, 2018 will of Eldrick Ray Thomas is valid, and as such, is to be probated. We assess all costs of these proceedings to Cynthia Thomas Benjamin.

**REVERSED AND RENDERED.**