Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,266-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
JO BETH RETTIG BAGGETT

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 644,021

Honorable Brady D. O'Callaghan, Judge

* * * * *

| | |
|---|---|
| THE TOUCHSTONE LAW FIRM, APLC | Counsel for Appellant, |
| By: David Mark Touchstone | Brenda F. Rhyns |
|     Dylan David Touchstone | |
| | |
| SHUEY SMITH LLC | Counsel for Appellee, |
| By: Richard E. Hiller | David E. Fite |
| | |
| ROBERT M. DAVIS, III | |

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This civil appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Brady O'Callaghan presiding. Appellant-Plaintiff, Brenda F. Rhyns ("Rhyns"), seeks review of the part of the trial court's judgment evicting her from estate property and declaring that the decedent's notarial testament and codicil were deficient and null. Appellee answered the appeal seeking damages for the filing of a frivolous appeal. For the following reasons, the trial court's judgment is affirmed. Appellee's request for damages is denied.

## FACTS AND PROCEDURAL HISTORY

On May 18, 2023, David Fite ("Fite") filed a petition for appointment as administrator of the estate of the decedent, Jo Beth Rettig Baggett ("Baggett"), who died intestate on August 25, 2022. Her husband predeceased her, and she had no children by birth or adoption. Fite said he was a creditor of the succession as he had trash picked up from the decedent's yard on a regular basis, and incurred costs and legal fees in preparing and filing the petition. He also claimed that the devaluation of his home resulted from Baggett's home not having been kept in a proper manner, in violation of his subdivision's building restrictions. Fite was appointed succession administrator.

On April 3, 2024, Fite filed a "Petition for Eviction and a Ruling to Declare that the Purported Notarial Testament is Invalid." The petition named Rhyns as the defendant. The petition stated that Rhyns was Baggett's caretaker, and that the decedent was severely ill and unable to care for herself in the days prior to her death. Fite said that Baggett owned a house

and lot located at 233 Clearwood Lane, Shreveport, Louisiana, and since her death, Rhyns continued to reside in the house. Fite stated that Rhyns did not file a petition to open the succession and that no one had attempted to probate Baggett's will.

Fite alleged that on September 1, 2022, Rhyns filed in the conveyance records of Caddo Parish a document that purported to be a seven-page notarial will of the deceased, which was dated March 16, 2021. The will bequeathed $10,000 to Baggett's friend, Arlene McEwen, and the remainder of her estate she left to Rhyns. Fite argued that the purported will was invalid because, although it was signed by Baggett and two witnesses, it was not notarized.

Fite further alleged that on February 14, 2024, an "Affidavit of Correction," signed by Notary Public Janice V. Morgan ("Morgan"), was also filed in the conveyance records of Caddo Parish. The affidavit was dated March 23, 2023, and it declared that an error was made in Baggett's will. The affidavit stated (verbatim):

> 1. The error(s) made consist(s) of No signature on the Attestation.

> 2. The correct information is that The Attestation is signed.

Rhyns filed a copy of Baggett's will with the affidavit. In the copy of the will, Morgan's signature and the date, backdated to March 16, 2021, appeared in the place for the notary's signature and date. Fite also claimed in his petition that Rhyns was not a relative or legatee of Baggett, therefore she did not have any rights of ownership over the decedent's assets. Fite averred that he delivered to Rhyns a notice to vacate the Clearwood Lane

2

property, but she had refused to do so. Fite asked the trial court to declare the will invalid and order Rhyns to vacate the Clearwood Lane property.

On April 11, 2024, Rhyns filed a "Petition to Probate Testament, and Codicil, with *Rule Nisi* to Remove Administrator, Recall Letters, and to Appoint Brenda F. Rhyns as Executrix (or Administratrix)." Rhyns stated that on March 18, 2021, two days after signing her purported will, Baggett executed a codicil in notarial form leaving the entirety of her estate to Rhyns and nominating her as executrix. The codicil also stated:

> II. Terms. All other terms, conditions, statements, and requests
> of the Last Will shall remain in effect. In every respect, I
> hereby ratify, reaffirm and republish my Last Will dated the
> 16th day of March 2021.

The two-page codicil was signed by a notary and two witnesses, but Baggett's signature appeared only on the first page. The second page included solely Morgan's signature and the following attestation (verbatim):

> On this 18 day of March 2021, personally appeared the
> Testator, known as Jo Beth Baggett, of this Codicil and
> acknowledged the foregoing to be her free act and deed, before
> me.

Rhyns asked that the court declare that the will, the affidavit, and the codicil together formed a valid last will and testament. Rhyns also asked the trial court to remove Fite as the administrator and appoint her administratrix. She contended that Fite was not a creditor of the estate because he held no estate debt. Rhyns stated that she had paid taxes, utilities, and completed maintenance on the house since Baggett's death, making her a creditor of the estate. Rhyns also filed an exception of no right of action with her petition, alleging Fite did not qualify as a creditor of Baggett's estate and had no right to serve as administrator.

On April 30, 2024, Fite filed an exception of no right of action arguing that the purported will, affidavit, and codicil were not valid notarial wills in accordance with La. C.C. art. 1577. Therefore, Rhyns did not have the right to challenge his appointment as administrator. Fite discovered that Baggett's succession had not been opened and that a document purporting to be her will was filed six days after her death in the conveyance records of Caddo Parish. Fite learned that the purported will was not signed by a notary.

On May 2, 2024, a trial was held on the validity of the will where the following evidence was adduced. Rhyns testified that Baggett was her mother's boss, which was how the two knew each other. She said she did not know if Baggett had any surviving relatives. Rhyns testified that she became Baggett's caretaker in 2016, and she moved into Baggett's home on Clearwood Lane about two years later to care for her.

Rhyns testified that Baggett decided to change her will. So, the decedent wrote a will herself, and they called a traveling notary to her home to sign it. On March 16, 2021, Johnnie Jackson ("Jackson"), Bertha Morris ("Morris"), and Morgan went to Baggett's home to witness and notarize Baggett's will. Rhyns witnessed Baggett, Jackson, and Morris sign the will. She stated that she saw the three and Morgan sign the codicil two days later, and it was Baggett's intent to bequeath the entirety of her estate to Rhyns. She later stated she did not know what the codicil contained at the time it was signed. Rhyns stated that on September 1, 2022, about one week after Baggett's death, she filed the will into the conveyance records of Caddo

4

Parish. She said that after she filed it, she realized the will was missing the notary's signature.

Rhyns testified that at the time Baggett wanted to execute her will, she had just had a knee replacement, so she spent more time in bed, but she was still able to move around and was mentally sharp. Rhyns said she was present when Morgan signed the affidavit of correction and signed in the vacant place for a notary's signature on a copy of Baggett's will. Rhyns said that Baggett informed her that she had a previous will in which she left her estate to her friend Louise, but she had not searched Baggett's papers to find the prior will.

Morgan testified that she was a licensed notary since 2004, and Rhyns asked her to notarize Baggett's will at her home on Clearwood Lane. Morgan said that she witnessed Baggett sign every page of her will; she was sitting in her bed at the time. Morgan stated that on March 16, 2021, she saw Jackson and Morris sign as witnesses, but she unintentionally forgot to sign the will as the notary.

Morgan said that two days later, she witnessed Baggett, Jackson, and Morris sign the codicil, to which she affixed her signature. Morgan testified that she prepared the codicil and reviewed it with Baggett. Morgan said she executed the act of correction to revise her error in failing to notarize Baggett's will, and she notarized the will, backdating it. She said she did not know if the will she signed was a copy. Morgan stated that Baggett signed the first page of the codicil, but she did not sign the second page, which contained only her signature as notary and an attestation clause. When asked if she was aware that the acknowledgment said just that the testator,

5

Baggett, appeared before her to sign the codicil, but did not mention the witnesses, Morgan responded that she was exclusively responsible for Baggett's signature.

The court questioned Morgan about why a date appears next to each signature in the will, and she responded, "Because it shows us … the date that they signed it." When the court asked Morgan if she signed the will on March 16, 2021, she stated that she did not. When asked if she notarized documents days after they were signed, she stated, "No." She agreed with the trial court that the most essential function of a notary is to sign in her official capacity at the time a document is executed.

Morris testified that on March 16, 2021, she witnessed Baggett sign her will and she affixed her own signature to the will after the decedent. She also saw Jackson sign the will. She said Baggett was "chatty," "friendly," and "of sound mind" at the time she signed her will. On March 18, 2021, she watched Baggett sign the codicil and then she signed it. Jackson testified that he witnessed Baggett execute her will and the codicil and he signed both documents after she did.

Robert G. Foley ("Foley") was accepted as an expert in the field of forensics and document examination. Foley testified that Baggett's signatures on the documents he was asked to review were all the same.

After argument, the trial court adjudicated the will and codicil invalid. The trial court said (verbatim):

> [Morgan] had one job, sign and date the document and she
> didn't do it. And if we say that you don't have to do that then
> [La. C.C. art.] 1577 seems to be pretty meaningless. I mean, I

6

read *Liner*.[1] I've read *Guezuraga*.[2] … But those are like the language in the attestation clause is off. This is not that. This is the notary didn't notarize it. And is trying to say that two years later, she can just literally put her signature with the date it happened. I mean that, I've had my law clerk looking for a way to try to remove her notary license. Because, to me, backdating something like that is borderline criminal. She didn't write *nunc pro tunc*. She didn't write, signing on this date in place of that date. She executed it as though she signed it that day.

….

[T]he whole point of the notary is to vouch for the witnesses that they signed it. That there wasn't a gun to the testator's head. That three people didn't just … kind of strong arm this person. If I find that person completely unworthy of belief, then … that's not a form of deviation. That is, there is no notary. I mean, as far as I'm concerned, for legal purposes, this is an un-notarized will, and the codicil doesn't have the attestation clause or the signature of the testator on the notarial verification. And I'm not sure I would trust anything that Ms. Morgan notarized, based on her conduct in my courtroom, to argue with the court about what a signature's date means…. [O]n the totality of the record, it's entirely possible that this was, in fact, Ms. Baggett's intent.

….

[I]t is this court's ruling that the will is such a grave deviation from Article 1577 that the notary's testimony left the court with more questions about her as a vouchsafer [*sic*] of documents, document authenticity, that I cannot give it legal effect. I simply find that it is too defective, that the notary signature is an essential part of the safeguarding against coercion, undue influence, and fraud. I'm not saying that those were pled specifically in this case, and I'm not making such a finding. However, I do think that the notary's contemporaneous and simultaneous signature and attestation is only for the purpose of protecting against fraud and all those other things. And, therefore, to say that it's merely technical would destroy the requirements of the statute…. I am adjudicating the will invalid.

….

[As to the codicil,] there is no signature on the attestation clause…. [Morgan] prepared [the codicil] and she still put her own signature page as a separate part of the document that's

---

[1] *Succession of Liner*, 19-02011 (La. 6/30/21), 320 So. 3d 1133.

[2] *Succession of Guezuraga*, 512 So. 2d 366 (La. 1987).

unsigned. So, it's not like the testator wrote way too much stuff to leave room for her to put an attestation clause. That document could have been executed at any time, in any location, and just attached. And given Ms. Morgan's testimony and demeanor in court, I have no confidence that it was done contemporaneously.

On May 28, 2024, the trial court signed a judgment declaring that the will, affidavit, and codicil did not meet the requirements for a notarial testament under La. C.C. art. 1577 and were invalid and null. The trial court also denied all relief Rhyns requested in her petition and exception of no right of action. The trial court granted Fite's exception of no right of action and his *rule nisi* for eviction, ordering Rhyns to vacate the estate property by May 31, 2024, at 5:00 p.m. Rhyns now appeals. Fite answered the appeal.

## DISCUSSION

*Validity of the Testament*

In her first assignment of error, Rhyns states that the trial court erred in invalidating Baggett's will and declaring it null. Baggett argues that notarial testaments should be construed liberally, and the testator's intent is the most important consideration in testamentary interpretation. Rhyns argues that will formalities are to function as safeguards against fraud, and where no fraud is alleged, they should not be used meticulously to thwart the evident intention of the testator.

Rhyns contends that Baggett's intent was clear; she had no remaining family and wanted to leave her estate to Rhyns, her longtime friend. Rhyns states that testimony showed that Baggett prepared her will herself, signed it, had two witnesses watch her sign it, and then signed it themselves, all of which a notary observed. Rhyns contends that the only defect in the will

8

was that the notary did not sign it, a defect which was overcome by testimony. Rhyns asks this court to reverse the trial court's judgment.

In a will contest, an appellate court must accord great weight to the factual findings of the trial court and cannot disturb such findings in the absence of manifest error. *Matter of Succession of Thomas*, 55,972 (La. App. 2 Cir. 12/18/24), 402 So. 3d 131. However, the trial court's interpretation and application of legal principles and statutory provisions are legal findings subject to *de novo* review. *Id.*

The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573. Louisiana Civil Code Article 1576 specifies that notarial wills are those "executed in accordance with the formalities of Articles 1577 through 1580.1." Louisiana Civil Code Article 1577 states:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

The notarial will is the codal successor of the statutory will. *Succession of Frabbiele*, 24-00091 (La. 12/13/24), 397 So. 3d 391. Its minimal formal requirements "provide a simplified means for a testator to

9

express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will." *Id*. at p. 4, 397 So. 3d at 395, quoting *Succession of Porche*, 288 So. 2d 27, 30 (La. 1973). The Louisiana Supreme Court stated that the primary motivation for enacting the codal requirements for notarial wills was the prevention of fraud, but evidence of fraud is not required to render a notarial will invalid for noncompliance with the mandatory requirements. *Succession of Frabbiele*, *supra*.

In *Matter of Succession of Thomas*, *supra*, this court stated that the purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity, and to prevent substitution of some other writing in its place. In *Succession of Roussel*, 373 So. 2d 155 (La. 1979), the supreme court noted:

> The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.

*Id*. at 157.

The Louisiana legislature adopted the statutory, now notarial, will from the common law to avoid the rigid formal requirements of the civil law. *Succession of Liner*, *supra*. The validity of a testament should be maintained through the liberal construction and application of the codal articles, instead of a strict interpretation, if there is substantial compliance with the codal provisions. *Succession of Bruce*, 20-239 (La. 1/27/21), 315 So. 3d 193; *In re Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So. 3d

10

845. Given the presumption in favor of the validity of testaments, proof of failure to comply with the formalities of testaments must be exceptionally compelling to rebut that presumption. *Id.*

We agree with the trial court that Baggett's purported testament does not meet with the requirements of La. C.C. art. 1577. The lack of a notary's signature on the decedent's will does not qualify as substantial compliance with the codal provision and is a fatal flaw. This was not a deviation from the recommended attestation language found in La. C.C. art. 1577; it was one of the fixed requirements of the article. "In the presence of the testator and each other, the notary and the witnesses shall sign" the attestation clause found in Article 1577. Use of the word "shall" makes it imperative that the notary sign the testament in the presence of the testator and two witnesses. We find that this is a defect which cannot be corrected later by an act of correction. In the context of testaments, signatures are notarized to prevent fraud and to provide certainty in the testator's intent.

Louisiana Revised Statute 35:2.1(A)(1)(a) stipulates that a clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the person who was the notary before whom the act was passed. However, the act of correction must be executed before two witnesses and a notary public. La. R.S. 35:2.1(A)(2). Even if Morgan's affidavit of correction was properly witnessed and notarized, which it was not, her failure to sign the will was not a clerical error by which an act of correction might overcome the requirement that a notary sign the testament in the presence of the testator and two witnesses.

We find that an unnotarized testament is invalid and null and that it cannot later be corrected through an act of correction. The fact that there is not a reported case challenging or questioning this holding is telling. It is such an essential requirement that testaments be notarized in the presence of the testator and two witnesses, that it shows that this holding is a core standard by which notaries and courts have been guided. The trial court's judgment invalidating Baggett's testament and finding it an absolute nullity is affirmed.

*Validity of the Codicil*

In her second assignment of error Rhyns contends that the trial court erred in finding that the codicil was not a legal notarial testament on its own. Rhyns argues that if this court determines that Baggett's will is invalid, then the court should hold that the codicil is a valid notarial testament. She argues that Baggett's intent is clear on the face of the codicil, and no reference to any extrinsic evidence is required. Rhyns says the codicil contains attestations and was signed contemporaneously by a notary and two witnesses two days after the will was signed, and it was signed by Baggett immediately after the conclusion of the dispositive provisions, which is sufficiently compliant with the form requirements for the testator's signature.

A codicil is an addition or qualification to a will and is considered part of the will. *In re Succession of Cannon*, 14-0059 (La. App. 1 Cir. 3/25/15), 166 So. 3d 1097, *writ denied*, 15-0816 (La. 6/5/15), 171 So. 3d 948. Louisiana Civil Code Article 1610 provides that modification of a testament must be in one of the forms prescribed for testaments, either in notarial form,

12

as found in La. C.C. arts. 1577 through 1580.1, or in the olographic form prescribed in La. C.C. art. 1575. Louisiana Civil Code Article 1575 states that an olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Baggett's codicil was not written in her own hand; therefore, Article 1575 is inapplicable.

Rhyns argues that the decedent's codicil alone stands as her testament. However, Article 1577 requires that the testator sign each page of her testament. The supreme court, in *Succession of Frabbiele*, *supra*, said:

> [La. C.C. art. 1577] Subsection (1) expressly requires a testator to sign his name at the end and on each separate page of a notarial will. There can be no dispute these provisions are mandatory; thus, any departure from these mandatory requirements constitutes a material deviation rendering a notarial will invalid.

*Id.* at p. 6, 397 So. 3d at 396.

Baggett did not sign at the end of the codicil. That alone makes her codicil invalid as an amendment to her will and as a testament. Article 1577 also requires the presence of an attestation clause which includes language stating that the witnesses and notary declared that the instrument was her testament and that, in the presence of the testator and each other, the two witnesses and notary signed the testament.

The attestation to Baggett's codicil stated, "On this 18 day of March 2021, personally appeared the Testator, known as Jo Beth Baggett, of this Codicil and acknowledged the foregoing to be her free act and deed, before me." We find that such language is not substantially like what is contained in Article 1577. The attestation did not indicate that Baggett declared, in the presence of the notary and two witnesses, that the testament was her last will and testament, or that all persons signed in the presence of each other,

including the notary. Baggett's codicil is insufficient and is a material deviation from the codal requirements for a valid notarial testament. This assignment of error lacks merit.

Rhyns' final claim about her eviction from estate property is rendered moot.

*Answer to the Appeal*

Fite answered the appeal seeking damages for the filing of a frivolous appeal. He contends that during argument at the trial court, Rhyns' counsel acknowledged that he had not discovered jurisprudence that recognized the validity of a notarial will that was not notarized. Fite asserts that Rhyns was aware that she was not raising a serious legal question and filed the appeal for delay purposes. Fite states that the lack of seriousness in Rhyns' position is further corroborated by Morgan's actions in trying to correct the defect in the will by preparing and executing her affidavit and backdating the will. Fite asks that this court award damages as costs and attorney fees were incurred in defending this appeal.

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for a frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. *Fuller v. Pittard*, 55,336 (La. App. 2 Cir. 11/15/23), 374 So. 3d 345, *writ denied*, 23-01666 (La. 2/27/24), 379 So. 3d 663.

14

Damages for a frivolous appeal are allowed only when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such a view is not meritorious. *Id.* The award of damages and attorney fees for a frivolous appeal is utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law. *Id.* Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. *Id.*

This court does not find that Rhyns filed her appeal for the purpose of delay. She filed a devolutive appeal, which in no way prevents or hinders the administration of Baggett's succession. We also do not find her appeal to be frivolous. The facts surrounding Baggett's invalidated will and codicil, particularly regarding Morgan's actions as notary, present a unique fact pattern. Furthermore, it is apparent from the trial transcript that the trial court did not believe Rhyns filed her claims with the court in bad faith or for frivolous reasons, and we agree. We decline to award damages.

## CONCLUSION

The trial court's judgment is affirmed. All relief sought by appellee, David E. Fite, is denied. The costs of the appeal are assessed to appellant, Brenda F. Rhyns.

**AFFIRMED.**